**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alan Amirault, | No. CV-25-00556-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Dawn Rush, et al., | |
| Defendants. | |

On October 6, 2025, Plaintiff Alan Amirault filed a pro se Complaint (Doc. 1), along with an Application for Leave to Proceed in Forma Pauperis (Doc. 2). On March 6, 2026, Plaintiff filed a Motion for Leave to File a First Amended Complaint. (Doc. 6.) For the following reasons, the Court will grant Plaintiff's Application for Leave to Proceed in Forma Pauperis, deny without prejudice his Motion for leave to File a First Amended Complaint, and require Defendants Dawn Rush, Mark J. Dannels, Jeffrey Glover, Kris Mayes, and Brian McIntyre to answer portions of the original Complaint.

## I.    Application for Leave to Proceed in Forma Pauperis

The Court may authorize the commencement and prosecution of any action without prepayment of fees if a litigant submits an affidavit showing that he is unable to pay the fees. 28 U.S.C. § 1915(a)(1). In his Application to Proceed in Forma Pauperis, Plaintiff avers that he is unemployed, that his only income is from disability insurance benefits, that his expenses nearly equal his income, that he has a total of $20.00 in his bank account, and that he has no assets except his vehicle. (Doc. 2) The Court finds that Plaintiff is unable to

pay the costs of these proceedings and will accordingly grant his Application to Proceed in Forma Pauperis.

## II.    Motion for Leave to File First Amended Complaint

Plaintiff moves for leave to file a first amended complaint. (Doc. 6.) Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading "once as a matter of course" within 21 days after serving it or 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f).  Plaintiff's initial Complaint has not yet been served, and accordingly Plaintiff is entitled to amend as a matter of course.

However, Local Rule of Civil Procedure 15.1(b) requires a party filing an amended pleading as a matter of course to file a separate notice with "a copy of the amended pleading that indicates in what respect it differs from the pleading which it amends, by bracketing or striking through the text that was deleted and underlining the text that was added." LRCiv 15.1(b).  Here, Plaintiff's Motion for Leave to File a First Amended Complaint fails to comply with this requirement.  Although the Court might, under certain circumstances, excuse a pro se plaintiff's failure to strictly comply with LRCiv 15.1(b), the Court finds that requiring strict compliance here is appropriate given the length of Plaintiff's original Complaint and because Plaintiff may benefit from the guidance set forth in this Order when drafting an amended complaint.  Furthermore, Plaintiff's proposed first amended complaint (Doc. 7) omits a First Amendment claim that is included in the original Complaint and which, as discussed below, the Court finds sufficiently states a claim.

Accordingly, the Court will deny without prejudice Plaintiff's Motion for Leave to File a First Amended Complaint.  If Plaintiff wishes to file an amended complaint curing any of the deficiencies addressed in this Order, he may do so in compliance with the requirements of Federal Rule of Civil Procedure 15(a)(1) and LRCiv 15.1(a)-(b).

## III.    Statutory Screening of Complaints

The Prison Litigation Reform Act states that a district court "shall dismiss" an in forma pauperis complaint if, at any time, the court determines that the action "is frivolous or malicious" or that it "fails to state a claim on which relief may be granted." 28 U.S.C. §

1915(e)(2). Section 1915(e) "applies to all in forma pauperis complaints, not just those filed by prisoners." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A complaint filed by a pro se litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation omitted). Nevertheless, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend before dismissal of the action. *See Lopez*, 203 F.3d at 1127-29.

## IV.    Plaintiff's Complaint

In his 41-page Complaint, Plaintiff asserts 33 claims—many of which overlap—against six named Defendants and three Doe Defendants. (Doc. 1.) Plaintiff indicates that his claims arise under 42 U.S.C. § 1983; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131-34; and Section 504 of the Rehabilitation Act, 29 U.S.C. §

794.  (*Id.* at 1 ¶ 1.)

Plaintiff is a resident of Benson, Arizona who is subject to Arizona's sex-offender registration statutes, A.R.S. § 13-3821, *et seq.*  (*Id.* at 2 ¶ 7.)  He alleges that his sex-offender worksheet score and general recidivism score demonstrate low-risk, but that Defendant Dawn Rush—a sex-offender analyst with the Cochise County Sheriff's Office—nevertheless increased his risk classification from level one to level two, without providing notice or an opportunity to be heard, based on a computerized worksheet designed to tally risk factors into a numerical score.  (*Id.* at 2, 4-5 ¶¶ 8, 21-23, 25-26.)  Plaintiff alleges that Defendant John Doe 2, a United States Marshals Service ("USMS") employee, instructed Rush to use the computerized worksheet that altered Plaintiff's classification, and that Defendant John Doe 3, a USMS supervisor, approved the instruction, even though USMS's statutory authority is limited to the interstate apprehension of individuals who fail to register.  (*Id.* at 1, 3-5 ¶¶ 2, 15-16, 20, 26.)

Plaintiff challenges Arizona's sex-offender registration scheme as excessive, irrational, and punitive.  (*See id.* at 1-2, 6-7 ¶¶ 3, 32.)  Plaintiff complains that the categorical bar on removal from the sex-offender registry renders him permanently ineligible for Housing and Urban Development ("HUD") and Section 8 housing programs.  (*Id.* at 3, 6 ¶¶ 12-13, 29.)  Plaintiff also alleges that he has been permanently disabled since 2014 due to allergies, migraines, and neuropathy, and that the sex-offender registration scheme's recurrent in-person reporting requirements, potential for broad community notification, and categorical bans on housing and employment exacerbate his disabilities.  (*Id.* at 4 ¶¶ 17-19.)  Although unclear, Plaintiff appears to indicate that he was charged with failure to register at a time when he was hospitalized. (*Id.* at 4 ¶ 18.)  He alleges Defendants failed to offer reasonable modifications, including remote reporting and extended reporting windows during acute medical events.  (*Id.* at 12-13 ¶ 67, 71.)

Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  (*Id.* at 37-38 ¶¶ 218-221.)  With respect to the requested injunctive relief, Plaintiff seeks to enjoin Defendants from (1) enforcing allegedly unconstitutional

provisions of Arizona's sex-offender registration scheme as applied to Plaintiff; (2) enforcing Senate Bills 1236 and 1404; (3) imposing reporting or classification obligations without individualized hearings, risk assessments, and consideration of Plaintiff's disabilities; and (4) refusing to provide reasonable modifications. (*Id.* at 37 ¶ 219.)

## V.    Discussion

Because Plaintiff's Complaint challenges Arizona's sex-offender registration scheme, the Court begins with an overview of the relevant statutes before moving into a discussion of Plaintiff's specific claims.

Arizona's first sex-offender registration statute was enacted in 1951, and since that time, the statutory scheme has undergone numerous revisions, with "the duties placed on sex offenders," "the access to their information," and "the penalties for failing to comply with registration requirements" increasing over the years. *See State v. Henry*, 228 P.3d 900, 903, 905 (Ariz. App. 2010).  Under the currently operative statutory scheme, individuals convicted of certain specified sex offenses are required to register as sex offenders, *see* A.R.S. § 13-3821(A), and, with limited exceptions, registration is a life-long requirement, *State v. Trujillo*, 462 P.3d 550, 552 (Ariz. 2020).  Failure to comply with the sex-offender registration requirements is punishable as a felony.  A.R.S. § 13-3824.

Registrants must allow themselves to be fingerprinted and photographed, must provide a DNA sample, and must disclose a variety of information about themselves, including their names and aliases, vehicle information, addresses, and the physical location of their residences.  A.R.S. § 13-3821(I), (O).  Registrants must also disclose their online identifiers—defined as "any electronic email address information or instant message, chat, social networking or other similar internet communication name"—as well as the names of any websites or internet communication services where the online identifiers are used. *Id.* § 13-3821(I), (S)(3).  Registrants must annually report in person to the sheriff of their county of registration to confirm in writing all required information.  *Id.* § 13-3821(J). They must also report changes in names, addresses, online identifiers, and vehicles within 72 hours, excluding weekends and legal holidays.  *Id.* § 13-3822(A), (C)-(D).  Registrants

must report name and address changes in person and in writing, and they must report changes in online identifiers and vehicles either in person or electronically. *Id.* They must report changes to online identifiers before using the changed or new online identifiers to communicate on the internet. *Id.* § 13-3822(C).

Arizona's sex-offender registration scheme contains tiered community notification requirements. A.R.S. § 13-3825. For level one offenders who have not been convicted of a dangerous crime against children, local law enforcement agencies may disseminate information about the offender to other law enforcement agencies and provide notice to people with whom the offender resides. *Id.* § 13-3825(C)(2). For level one offenders convicted of a dangerous crime against children, and for level two and level three offenders, a notification including the offender's photograph, address, and a summary of the offender's status and criminal background is disseminated in nonelectronic format to the surrounding neighborhood, area schools, appropriate community groups, and prospective employers, and a press release is given to local electronic and print media. *Id.* § 13-3825(C)(1). The Department of Public Safety ("DPS") maintains information about offenders convicted of certain offenses, as well as any offender whose risk assessment has been determined to be a level two or level three, on a sex-offender website. *See id.* § 13-3827(A). The information maintained on the sex-offender website includes offenders' names, addresses, ages, current photographs, offenses, and notification levels. *Id.* § 13-3827(B). Local law enforcement agencies are tasked with categorizing offenders and placing them into notification levels. *Id.* § 13-3825(D). With limited exceptions that do not appear to be relevant here, *see id.* § 13-3825(N), 13-923, the statutory scheme does not entitle registrants to request a hearing to challenge their risk assessment score and notification level.

Under Department of Housing and Urban Development ("HUD") regulations, lifetime sex-offender registrants are categorically barred from federally subsidized housing. 24 C.F.R. § 982.553(a)(2)(i).

. . . .

## A. *Bivens* Claims

Plaintiff sues two unnamed USMS officials, John Doe 2 and John Doe 3 (Doc. 1 at 3 ¶¶ 15-16), and he indicates generally that his claims arise under *Bivens* (*id.* at 1 ¶ 1), but he does not label any particular claim as a *Bivens* claim. In Count 23, Plaintiff raises a claim under the anti-commandeering doctrine of the Tenth Amendment. (Doc. 1 at 25 ¶¶ 156-160.)[1] The Court liberally interprets this claim as a *Bivens* claim asserted against Defendants John Doe 2 and 3.

In *Bivens*, the Supreme Court recognized an implied damages action against federal officials directly under the Fourth Amendment. *See generally* 403 U.S. 388. Over the following decade, the Supreme Court recognized implied damages actions against federal officials in two other cases. *See Davis v. Passman*, 442 U.S. 228 (1979) (congressional staffer's Fifth Amendment sex discrimination claim); *Carlson v. Green*, 446 U.S. 14 (1980) (federal prisoner's Eighth Amendment inadequate medical care claim). In the years since, "expanding the *Bivens* remedy" has become "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks omitted).

Now, when analyzing a proposed *Bivens* claim, a court must engage in a two-step inquiry. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). First, the court must determine whether the claim "presents a new *Bivens* context," and, if it does, the court must determine whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492 (internal quotation marks omitted). This two-step analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

Here, Plaintiff alleges that Defendants John Doe 2 and John Doe 3, without statutory authority and in violation of the anti-commandeering doctrine, directed and approved actions taken by Defendant Rush. (Doc. 1 at 25 ¶¶ 157-160.) Plaintiff's claims against the federal Doe Defendants present a new *Bivens* context because they do not involve the same

---

[1] Plaintiff also references the anti-commandeering doctrine in Count 1. (Doc. 1 at 8 ¶ 40.) That portion of Count 1 will be dismissed with prejudice as duplicative of Count 23.

constitutional rights at issue in *Bivens*, *Davis*, and *Carlson*, and the factual allegations underlying Plaintiff's claims are entirely dissimilar. *See Ziglar*, 582 U.S. at 139 (a claim presents a new *Bivens* context if there are any meaningful differences between the claim and the three cases in which the Supreme Court has implied a damages action). There are rational reasons "to think that Congress is better suited to weigh the costs and benefits of allowing a damages action" for violation of the anti-commandeering doctrine of the Tenth Amendment, and therefore expansion of *Bivens* is prohibited. *See Egbert*, 596 U.S. at 496 (internal quotation marks and emphasis omitted). Accordingly, Plaintiff has failed to state a *Bivens* claim for damages in Count 23.

To the extent Plaintiff seeks declaratory and/or injunctive relief with respect to Defendants John Doe 2 and John Doe 3—as opposed to damages—Plaintiff still has failed to state a claim on which relief can be granted. The Tenth Amendment to the Constitution bars the federal government from "commanding the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Haaland v. Brackeen*, 599 U.S. 255, 281 (2023) (quoting *Printz v. United States*, 521 U.S. 898, 935 (1997) (alteration marks omitted)). But states and their localities are free to voluntarily assist with federal enforcement efforts. *See United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019). Here, Plaintiff does not plead facts plausibly showing that John Doe 2 and John Doe 3 compelled Rush to enforce federal laws. To the contrary, Plaintiff's Complaint indicates that Defendant Rush voluntarily accepted instructions from USMS and alleges that the instructions related to the enforcement of *state* sex-offender registration laws. Under the facts alleged, the anti-commandeering doctrine of the Tenth Amendment is inapplicable.

The Court will dismiss Count 23, and Defendants John Doe 2 and John Doe 3, with prejudice to the extent Plaintiff seeks damages pursuant to *Bivens*, and without prejudice to the extent Plaintiff seeks declaratory and/or injunctive relief.

**B. Title II of the ADA and Section 504 of the Rehabilitation Act**

Plaintiff indicates generally that his claims arise under Title II of the ADA and §

- 8 -

504 of the Rehabilitation Act.  (Doc. 1 at 1 ¶ 1.)  Counts 6, 7, and 19 of the Complaint allege ADA violations.  (*Id.* at 12-14, 23 ¶¶ 65-77, 138-142.)[2]  Specifically, in Counts 6 and 19, Plaintiff alleges that Defendants violated the ADA by failing to provide reasonable modifications to the sex-offender in-person reporting requirements.  (*Id.* at 12-14, 23 ¶¶ 66-71, 140-142.)  In Count 7, Plaintiff alleges that his exclusion from federally subsidized housing violates his rights under the ADA.  (*Id.* at 14 ¶¶ 73-77.)  Plaintiff does not specifically allege violations of the Rehabilitation Act in any of the counts of the Complaint.  However, because the elements of a claim under § 504 of the Rehabilitation Act and Title II of the ADA overlap, the Court liberally construes Counts 6, 7, and 19 as alleging violations of both Title II of the ADA and § 504 of the Rehabilitation Act.

To state a claim under Title II of the ADA, a plaintiff must allege facts plausibly showing: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).  To state a claim under § 504 of the Rehabilitation Act, a plaintiff must plausibly allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Id.*

A "qualifying disability" is any physical or mental impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1).  Plaintiff alleges that he is a qualified individual with a disability because he suffers from "severe environmental allergies, chronic migraines, and neuropathy." (Doc. 1 at 12 ¶ 66.)  Plaintiff indicates he receives Social Security disability benefits (*see id.* at 4 ¶ 17), but he fails to allege any facts describing how his conditions substantially limit any of his life activities for purposes of plausibly alleging that he is a qualified individual with a disability under the ADA.

---

[2] Counts 7 and 19 also allege equal protection violations.  The Court addresses the equal protection components of those claims in Section IV(C)(6), *infra*.

Furthermore, assuming that Arizona's sex-offender registry constitutes a public entity's service, program, or activity, Plaintiff does not allege that participation in the registry is a "benefit," *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998), nor that he was excluded from participation in the registry by reason of his alleged disability. To the contrary, Plaintiff challenges his required participation in the sex-offender registry as burdensome and punitive. To the extent Plaintiff alleges that Defendants violated the ADA or the Rehabilitation Act by failing to remove him from the sex-offender registry, lower his classification status, or alter his in-person reporting requirements, Plaintiff does not cite, and the Court has not located, any authority requiring a public entity to remove an individual from a sex-offender registry or alter the individual's registry status or reporting requirements in order to accommodate the individual's disability. Furthermore, Plaintiff concedes that he never requested any accommodations for his alleged disability (Doc. 1 at 4, 13 ¶¶ 19, 68), and he fails to make any non-conclusory factual allegations showing that any Defendant knew of his alleged disability.

With respect to Count 7, Plaintiff contends that he has been denied the benefits of HUD and Section 8 housing programs, but he does not contend that he was denied the benefits of the housing programs due to his alleged disabilities; instead, he alleges that his inability to participate in the housing programs stems solely from his placement on the sex-offender registry. (*Id.* at 14 ¶¶ 73-74.) Furthermore, Plaintiff does not sue any federal official responsible for implementing the regulations that exclude Plaintiff from federally subsidized housing, and Plaintiff does not directly challenge those federal regulations, instead challenging only Arizona's sex-offender registration statutes.

Because Plaintiff has failed to allege facts plausibly stating a claim for violation of the ADA or the Rehabilitation Act, the Court will dismiss Counts 6, 7, and 19 without prejudice.

**C. Claims Under 42 U.S.C. § 1983**

To state a claim on which relief can be granted under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly showing that "(1) acts by the defendants (2) under color of state

law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994) (internal alteration marks omitted)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Plaintiff alleges a violation of 42 U.S.C. § 1983 in Count 32 (Doc. 1 at 30-31 ¶¶ 197-200), and specific constitutional violations in various other Counts.  The Court interprets the claims alleging constitutional violations as claims raised under 42 U.S.C. § 1983, and the Court will dismiss Count 32 with prejudice as duplicative.

### 1.  Individual- vs. Official-Capacity Claims

Plaintiff sues Defendant Kris Mayes, the Attorney General of Arizona, in her official capacity, and appears to sue Defendant Dawn Rush in her individual capacity. (Doc. 1 at 2-3 ¶¶ 8, 12.)  It is unclear whether Plaintiff is suing Defendants Sheriff Mark J. Dannels, Colonel Jeffrey D. Glover, Ken Hunter, and Brian McIntyre in their individual or official capacities.  (*See id.* at 2-3 ¶¶ 9-11, 13.)

Individual-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," whereas official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  To state an individual-capacity claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly showing that a government-official defendant, "through the official's own actions, has violated the Constitution."  *Ashcroft*, 556 U.S. at 676.  To state an official-capacity claim under § 1983, a plaintiff must allege facts plausibly showing that a policy or custom of the entity of which the defendant is an agent was the moving force behind the constitutional violation.  *Kentucky*, 473 U.S. at 167.  There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly

violated a plaintiff's constitutional rights, or a municipality's employment of such a person, does not on its own result in liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges that Defendant Dannels, as the elected sheriff of Cochise County, is responsible for CCSO policies as well as oversight, training, and supervision within the sex-offender registration unit, and that he failed to supervise or intervene to ensure constitutionally adequate procedures for sex-offender classification determinations. (Doc. 1 at 2, 5-6, 31 ¶¶ 9, 27, 200.) Plaintiff alleges that Defendant Glover, as the Director of DPS, is "responsible for statewide administration and enforcement of sex-offender registration" in Arizona, and that he likewise failed to supervise or intervene to ensure policies to protect Plaintiff's constitutional rights. (Doc. 1 at 3, 6, 31 ¶¶ 10, 28, 200.) Plaintiff alleges that Defendant Hunter, as the Deputy Director of DPS, is "responsible for implementing and maintaining DPS's sex-offender registry protocols," and that he, like Glover, failed to supervise or intervene to ensure constitutional policies. (Doc. 1 at 3, 6, 31 ¶¶ 11, 28, 200.) Plaintiff alleges that Defendant McIntyre, as the Cochise County Attorney, "participates in the enforcement of A.R.S. § 13-3821 and related provisions," which provide no avenue for registrants to seek relief from lifetime registration. (Doc. 1 at 3, 6, 14, 20, 27-28, 31 ¶¶ 13, 30, 77, 120, 175, 200.)

To the extent Plaintiff is asserting individual-capacity claims against Defendants Dannels, Glover, Hunter, and McIntyre, he has not alleged facts plausibly showing that any of those Defendants were personally involved in any alleged violations of Plaintiff's constitutional rights. Accordingly, the Court will dismiss Plaintiff's individual-capacity claims against Dannels, Glover, Hunter, and McIntyre without prejudice.

To the extent Plaintiff is suing Dannels and McIntyre in their official capacities, the real party in interest is Cochise County. *See Kentucky*, 473 U.S. at 165.[3] To the extent

---

[3] The Cochise County Sheriff's Department and Cochise County Attorney's Office are nonjural entities incapable of suing or being sued, but Cochise County may be sued. *See* A.R.S. § 11-201(A)(1) (counties may sue and be sued); *Payne v. Arpaio*, No. CV09–1195–PHX–NVW, 2009 WL 3756679, at *4 (D. Ariz. Nov. 4, 2009) (county sheriff's department is a nonjural entity); *Wilson v. Yavapai Cnty. Sheriff's Office*, No. CV 11–8199–PCT–JAT, 2012 WL 1067959, at *4 (D. Ariz. Mar. 29, 2012) (county sheriff's office and county

- 12 -

Plaintiff is asserting official-capacity claims against Glover and Hunter, the real party in interest is the State of Arizona. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (when a state official is sued in his official capacity, the real party in interest is not the individual, but the state itself).

Absent waiver or abrogation of sovereign immunity, the Eleventh Amendment generally bars suits brought by a private party against a state or its instrumentality. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), provides an exception to this general rule, allowing actions for prospective declaratory or injunctive relief to be brought "against state officers in their official capacities for their alleged violations of federal law," *Coalition to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012), provided the official sued has a "fairly direct" connection with the enforcement of the challenged law, *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704. The Arizona DPS implements Arizona's sex-offender registration statutes. *See Doe v. Mayes*, No. CV-24-02259-PHX-MTL, 2025 WL 1865805, at \*2 (D. Ariz. July 7, 2025). Accordingly, the Court finds that Plaintiff's official-capacity claims against Glover and Hunter are not barred by the Eleventh Amendment.[4] However, the official-capacity claims against Hunter will be dismissed with prejudice as duplicative of the official-capacity claims asserted against Glover.

Plaintiff states that Defendant John Doe 1 is the immediate supervisor of Defendant Rush, that he is sued in both his individual and official capacities, and that he failed to supervise or intervene when Rush reclassified Plaintiff's sex-offender level. (Doc. 1 at 3,

---

attorney are non-jural entities). Because the defendants work for different entities within Cochise County, the Court declines at this stage to dismiss the official-capacity claims against either as redundant, to ensure that the named defendants in this action are capable of fully providing the injunctive relief sought.

[4] Plaintiff's Complaint alleges that Mayes, as the Attorney General of Arizona, enforces Arizona's sex-offender registration statutes. (Doc. 1 at 3, 6, 14, 20, 27-28, 31 ¶¶ 12, 29, 77, 120, 175, 200.) Focusing on the four corners of Plaintiff's Complaint at the screening stage, the Court declines to dismiss Plaintiff's official-capacity claims against Mayes on Eleventh Amendment immunity grounds. *But see Mayes*, 2025 WL 1865805, at \*2 (dismissing on Eleventh Amendment immunity grounds official-capacity claims against Mayes challenging Arizona's sex-offender registration statutes after finding an insufficient connection between the Attorney General and enforcement of the statutes).

5, 31 ¶¶ 14, 26, 200.) Because vicarious liability is inapplicable to § 1983 suits, *Iqbal*, 556 U.S. at 676, Plaintiff's allegations that Defendant John Doe 1 is the supervisor of Defendant Rush and failed to intervene when Rush reclassified Plaintiff are insufficient to state an individual-capacity claim. Furthermore, any official-capacity claims against Defendant John Doe 1 are duplicative of the official-capacity claims against Sheriff Dannels. Accordingly, the Court will dismiss without prejudice Defendant John Doe 1.

### 2. Senate Bills 1236 and 1404—Standing

In Count 33, Plaintiff alleges that Senate Bills 1236 and 1404 violate due process, equal protection, and the ex post facto clause. (Doc. 1 at 31-34 ¶ 202-208.) He requests a declaratory judgment that Senate Bills 1236 and 1404 are illegal, and injunctive relief enjoining their enforcement. (*Id.* at 37 ¶¶ 218-219.)

The Arizona legislature passed Senate Bills 1236 and 1404 during the 2024 legislative session. Senate Bill 1236 adds information to the sex-offender website of additional categories of offenders, based primarily on the offender's and victim's age at the time of the offense. *See Doe v. Mayes*, No. CV-24-02259-PHX-MTL, 2024 WL 4870503, at *1 (D. Ariz. Nov. 22, 2024). Senate Bill 1404 adds a reporting requirement for sex offenders who have legal custody of a child who is enrolled in school, and expands community notification requirements to level one offenders convicted of a dangerous crime against children. *Id.* at *2. Plaintiff's Complaint does not allege any facts plausibly indicating that Senate Bills 1236 or 1404 altered his sex-offender registration, reporting, publication, or community notification requirements. Accordingly, Plaintiff has not shown that he has standing to assert constitutional challenges to Senate Bills 1236 and 1404, and Count 33 will be dismissed without prejudice.

### 3. Due Process Claims

Plaintiff raises due process claims in Counts 1, 2, 8, 10, 11, 18, 20, 21, 22, 24, 25, 28, 29, and 31. (Doc. 1 at 8-10, 15, 17-18, 22-26, 28-30 ¶¶ 35-48, 78-83, 90-101, 133-137, 143-155, 161-164, 179-187, 193-196.) Specifically, Plaintiff raises a substantive due process claim in Count 1 and a procedural due process claim in Count 2. (*Id.* at 8-10 ¶¶

35-48.)  In the other claims, he alleges (1) that the in-person reporting requirements of Arizona's sex-offender registration scheme impinge his liberty interests in travel/relocation (Counts 8, 24), and bodily integrity/health (Count 22); (2) that the community notification and Internet posting requirements impinge his liberty interests in privacy (Count 11), reputation (Counts 21, 29), family integrity (Count 18), and occupational liberty (Count 20); (3) that his reclassification as a level two registrant was arbitrary and irrational, and Defendants treated him hostilely (Counts 25, 28, 31); and (5) that the indefinite burdens of the sex-offender registration scheme violate his due process rights (Count 10).  (*Id.* at 15, 17-18, 22-26, 28-30 ¶¶ 78-83, 90-101, 133-137, 143-155, 161-164, 179-187, 193-196.)[5]

The Court analyzes below the substantive due process claim raised in Count 1 and the procedural due process claim raised in Count 2.  The Court will dismiss Counts 8, 10, 11, 18, 20, 21, 22, 24, 25, 28, 29, and 31 with prejudice as duplicative to the extent they allege due process violations, although the Court considers the allegations of those counts for context regarding the contours of Plaintiff's due process claims in Counts 1 and 2.

### a. Substantive Due Process

The Fourteenth Amendment's due process clause prohibits states from depriving persons of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  The clause protects individuals against violations of both substantive and procedural due process.  *Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025).  "Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs."  *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) (internal quotation marks omitted).  When a law infringes a fundamental right, it will survive substantive due process scrutiny "only if the infringement is narrowly tailored to serve a compelling state interest."  *Regino*, 133 F.4th at 960 (internal

---

[5] Plaintiff purports to assert both due process and First Amendment violations in Counts 8 and 25.  (Doc. 1 at 15, 26-27 ¶¶ 78-83, 165-168.)  The Court interprets Count 8 as asserting a liberty interest in travel for purposes of Plaintiff's due process claims.  The Court analyzes the First Amendment retaliation portion of Count 25 in Section IV(C)(9), *infra*.  In Count 10, Plaintiff asserts both due process and Eighth Amendment violations.  (*Id.* at 17 ¶¶ 90-95.)  The Court analyzes the Eighth Amendment portion of Count 10 in Section IV(C)(8), *infra*.

quotation marks omitted). Laws that do not infringe on any fundamental rights are constitutional "so long as they are rationally related to legitimate government interests." *Id.* (internal quotation marks omitted).

Fundamental rights are those that are so "deeply rooted" in the nation's "history and tradition and implicit in the concept of ordered liberty . . . that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotation marks and citations omitted). The Ninth Circuit has held "that persons who have been convicted of serious sex offenses do not have a fundamental right to be free from [sex-offender] registration and notification requirements[.]" *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam); *see also Richardson v. Barr*, 827 F. App'x 624, 625 (9th Cir. 2020) (same); *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (same); *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (same). In light of this precedent, Plaintiff has not plausibly alleged a substantive due process claim implicating strict scrutiny review.[6] Accordingly, rational basis review applies to Plaintiff's substantive due process claims.

Arizona's requirements for sex-offender registration and community notification generally satisfy rational basis review given their reasonable relation to the government's interest in public safety and preventing recidivism. *See John D. v. Vanderpool*, No. CV 05–2254–PHX–JAT, 2006 WL 2038466, at *5-6 (D. Ariz. July 19, 2006) (Arizona "has a reasonable and legitimate interest in protecting the health, safety, and welfare of its citizens, and community notification is rationally related to achieving that interest by alerting the public to the risk of sex offenders in their community"); *Tandeske*, 361 F.3d at 597 (finding sex-offender registration statute had a reasonable relation to the legitimate governmental purposes of public safety).

It may be possible for Plaintiff to state a claim that Arizona's sex-offender registration statutes fail rational basis review to the extent they require lifetime registration

---

[6] Furthermore, the Court notes that Plaintiff alleges only indirect, incidental burdens on his right to interstate travel, bodily integrity, family integrity, and occupational liberty, and he cites no authority supporting the existence of a fundamental liberty interest in rehabilitation and reentry.

and do not provide any avenue of removal for individuals who no longer pose any public safety risk or danger of recidivism.[7]  However, Plaintiff has not alleged facts plausibly showing that he poses no public safety risk or danger of recidivism.  *See Smith v. Doe*, 538 U.S. 84, 102 (2003) (finding statute requiring lifetime reporting for individuals convicted of aggravated or multiple sex offenses "reasonably related to the danger of recidivism").  Plaintiff does not include any information about the conviction or convictions that triggered his registration requirement, including the nature and date of those convictions, or about his criminal history generally, and he concedes that his general recidivism risk score "was over the minimal score by 2 points." (Doc. 1 at 5 ¶ 23.)  Plaintiff has failed to plausibly allege that Arizona's sex-offender registration statutes violate his substantive due process rights.

In addition to providing enhanced protection from legislation that infringes fundamental rights, substantive due process protects individuals from misconduct by government officials that is so egregious it "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).  To be "conscience-shocking," conduct must be so "brutal" and "offensive" that it does not "comport to traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).  Plaintiff alleges that Defendants violated his substantive due process rights by arbitrarily and irrationally reclassifying him as a level two registrant.  However, this allegedly inaccurate classification does not rise to the level of conscience-shocking conduct that would violate substantive due process.  *See Breithaupt*, 352 U.S. at 435.

The Court will dismiss Count 1 without prejudice.

### b.  Procedural Due Process

In Count 2, Plaintiff alleges that he was reclassified as a level two registrant without notice or a hearing, in violation of procedural due process. (Doc. 1 at 9-10 ¶ 43-48.)  "A section 1983 claim based upon procedural due process has three elements: (1) a liberty or

---

[7] In *Connecticut Department of Public Safety v. Doe*, the Supreme Court expressed no opinion as to whether principles of substantive due process were violated by a law requiring the public disclosure of sex-offender information regardless of current dangerousness. 538 U.S. 1, 8 (2003).

property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Houston v. Maricopa Cnty.*, 116 F.4th 935, 945 (9th Cir. 2024) (internal quotation and alteration marks omitted).  If sex-offender registration is required solely by the fact of one's conviction, any additional process is superfluous, and a procedural due process challenge to the registration laws fails. *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003).  "Arizona has determined that conviction is sufficient, as opposed to a determination of dangerousness or risk level, to warrant lifetime subjection to [sex-offender] registration requirements."  *Doe v. Sheridan*, No. CV-23-01938-PHX-SMM, 2025 WL 3485201, at *12 (D. Ariz. Nov. 7, 2025).  Because registrants have "already had a procedurally safeguarded opportunity to contest" their convictions, a procedural due process challenge to Arizona's lifetime registration requirement fails.  *Id.* (internal quotation marks omitted); *see also Greer v. Arizona*, No. CV 13–0166–TUC–BGM, 2013 WL 2896866, at *4-5 (D. Ariz. June 13, 2013) (dismissing procedural due process claim because "the Arizona sex offender registration and notification statutes turn on the fact of conviction").

However, the community notification provisions of Arizona's sex-offender registration statutes do not hinge solely on the fact of a registrant's conviction.  The degree to which information about registered sex offenders is disseminated depends on whether the offenders are classified as level one, level two, or level three offenders, and the statutory scheme tasks local law enforcement agencies with placing offenders into notification levels, with registrants generally not entitled to a hearing to challenge their classification. *See* A.R.S. § 13-3825(C)-(D).  Additional process may be necessary if "it gives a sex offender the ability to prove or disprove facts related to the applicability" of a sex-offender registration requirement. *Juvenile Male*, 670 F.3d at 1014.  Liberally construed, Plaintiff's allegations that he was classified as a level two registrant without notice, a hearing, or an opportunity to challenge the classification is sufficient to plausibly state a procedural due process claim.

The Court will require Defendant Rush to answer Count 2 of the Complaint in her

individual capacity, and will require Defendants Mayes, Dannels, Glover, and McIntyre to answer Count 2 in their official capacities.

### 4. Void for Vagueness

In Count 14, Plaintiff alleges that the sex-offender classification procedures of Arizona's registration scheme are void for vagueness.  (Doc. 1 at 19-20 ¶¶ 112-117.)  "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  A criminal statute is void for vagueness "if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden."  *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

Plaintiff does not allege that A.R.S. § 13-3824—which imposes criminal penalties on registrants who fail to comply with Arizona's sex-offender registration requirements— fails to give fair notice of what conduct is prohibited.  Instead, Plaintiff challenges as opaque the process by which registrants' risk levels are classified.  Because Plaintiff does not challenge provisions imposing a criminal offense on sex offenders, and does not allege that Arizona's sex-offender registration laws fail to provide fair notice of what conduct may subject registrants to criminal penalties, the void-for-vagueness doctrine is inapplicable.  *See Mayes*, 2025 WL 1865805, at *6 (finding void-for-vagueness doctrine inapplicable where challenged terms did "not impose a criminal offense on sex offenders," but, rather, directed law enforcement's dissemination of sex-offender information).

The Court will dismiss Count 14 without prejudice.

### 5. Unconstitutional Conditions

In Count 30, Plaintiff alleges a violation of the unconstitutional conditions doctrine.  (Doc. 1 at 29-30 ¶¶ 188-192.)  Under that doctrine, "'the government may not require a person to give up a constitutional right in exchange for a discretionary benefit conferred by the government.'"  *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1136 (9th Cir. 2024) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994)) (internal

alteration marks omitted). Plaintiff has not alleged facts plausibly showing that Defendants coerced him "into forfeiting a constitutional right in exchange for a benefit" or that Defendants withheld a benefit from Plaintiff based on his "refusal to surrender a constitutional right." *See id.* at 1137. Accordingly, Plaintiff has not plausibly alleged a violation of the unconstitutional conditions doctrine.

The Court will dismiss Count 30 without prejudice.

### 6. Equal Protection

Plaintiff alleges equal protection violations in Counts 3, 7, 19, and 27. (Doc. 1 at 10, 14, 23, 27-28 ¶¶ 49-53, 72-77, 138-142, 174-178.) Specifically, in Count 3, Plaintiff alleges that lifetime registration with no avenue for removal for low-risk individuals, and his classification as a level two registrant, deny him equal protection of the laws. (*Id.* at 10 ¶¶ 49-53.) In Counts 7 and 27, Plaintiff alleges that, under HUD regulations, his lifetime registration as a sex offender permanently and arbitrarily precludes him from federally subsidized housing despite his low risk, in violation of equal protection. (*Id.* at 14, 27-28 ¶¶ 72-77, 174-178.) In Count 19, Plaintiff alleges that the in-person reporting requirements of A.R.S. § 13-3822 disproportionately burden him compared to non-disabled registrants, in violation of equal protection. (*Id.* at 23 ¶¶ 138-142.)[8]

"The Equal Protection Clause of the Fourteenth Amendment applies strict scrutiny if the aggrieved party is a member of a protected or suspect class, or otherwise suffers the unequal burdening of a fundamental right." *Juvenile Male*, 670 F.3d at 1009. In the absence of a suspect classification, rational basis review applies, meaning government actions will be upheld "if they are rationally related to a legitimate state interest." *Id.* (internal quotation and alteration marks omitted). Sex offenders are not a protected or suspect class. *Id.*; *see also United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001). "Offender classifications based on criminal history are not suspect classifications." *Mayes*, 2025 WL 1865805, at *7. And as discussed above, Plaintiff has not sufficiently alleged that Arizona's sex-offender registration statutes burden a fundamental right. Accordingly,

---

[8] The ADA portion of Count 19 is addressed in Section IV(B), *supra*.

rational basis review applies to Plaintiff's equal protection claim and, as discussed above, Arizona's sex-offender registration and notification laws generally satisfy rational basis review given their rational connection to the legitimate governmental interest in public safety. *See Mayes*, 2025 WL 1865805, at \*8; *Greer*, 2013 WL 2896866, at \*5 ("the requirements of the Arizona sex offender registration and notification statutes 'satisfy rational basis review and do not violate the Equal Protection Clause'" (quoting *Juvenile Male*, 670 F.3d at 1010)).

Plaintiff's claim that his classification as a level two registrant violates equal protection constitutes a "class of one" equal protection claim. "[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). However, when state action by its nature involves "discretionary decisionmaking based on a vast array of subjective, individualized assessments," a class-of-one claim fails, as "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.* at 603-04. Based on the factual allegations of Plaintiff's Complaint, his classification level was determined based on a subjective, individualized assessment. Accordingly, Plaintiff has not plausibly alleged a "class of one" equal protection claim.

Counts 7 and 27 fail to state a claim on which relief can be granted because Plaintiff alleges that his exclusion from federally subsidized housing results from HUD regulations but Plaintiff challenges only Arizona's sex-offender registration statutes, rather than the HUD regulations, and Plaintiff has not named as a defendant any federal official responsible for implementing the HUD regulations.

Count 19 fails to state a claim on which relief can be granted because "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Bd. of Trustees of U. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001). "If special accommodations for the

- 21 -

disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." *Id.* at 368.

The Court will dismiss without prejudice the equal protection claims in Counts 3, 7, 19, and 27.

### 7. Eighth Amendment Excessive Fines

In Count 17, Plaintiff alleges that A.R.S. § 13-3824 subjects him to felony penalties, fines, and imprisonment for noncompliance with burdensome reporting requirements, in violation of the Eighth Amendment's prohibition on excessive fines. (Doc. 1 at 21-22 ¶¶ 128-132.)

The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. A "fine," within the meaning of the Eighth Amendment, is "a payment to a sovereign as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 327 (1998). A fine is excessive in violation of the Eighth Amendment "if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334.

Plaintiff does not plead facts showing that he has standing to raise an Eighth Amendment challenge to the criminal penalties attached to noncompliance with Arizona's sex-offender registration requirements. Plaintiff refers vaguely to a "charge for failure to register" (Doc. 1 at 4 ¶ 18), but he does not allege that he has been prosecuted, fined, and/or sentenced for noncompliance with registration requirements. Accordingly, Plaintiff fails to state a claim that he has been subjected to an excessive fine in violation of the Eighth Amendment.

The Court will dismiss Count 17 without prejudice.

### 8. Claims Alleging Punitive Statutory Scheme

Plaintiff raises several claims that hinge on whether Arizona's sex-offender registration scheme is properly classified as punitive. In Count 4, Plaintiff alleges that his original offense predates many amendments to the registration laws, including lifetime public Internet posting, and that retroactive application of the laws imposes new punitive

obligations on him in violation of the ex post facto clause. (Doc. 1 at 11 ¶¶ 54-58.) In Counts 5, 10, and 26, Plaintiff alleges that the sex-offender registration scheme imposes disproportionate punishment that forecloses rehabilitation and reintegration, in violation of the Eighth Amendment. (*Id.* at 11-12, 17, 27 ¶¶ 59-64, 90-95, 169-173.) In Count 12, Plaintiff alleges that the registration scheme imposes continuing punishment for an offense for which he already served his sentence, and that his reclassification as a level two registrant imposes an additional punitive sanction, in violation of the double jeopardy clause. (*Id.* at 18-19 ¶¶ 102-106.) In Count 13, Plaintiff alleges that the registration scheme constitutes an unconstitutional bill of attainder. (*Id.* at 19 ¶¶ 107-111.)

Article I, § 10 of the United States Constitution prohibits States from passing bills of attainder and ex post facto laws. "A bill of attainder is a legislative act which inflicts punishment without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315 (1946). An ex post facto law "imposes a punishment for an act which was not punishable at the time it was committed[,] or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). The double jeopardy clause of the Fifth Amendment prohibits "multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989). The Eighth Amendment prohibits "cruel and unusual punishments."

Plaintiff's bill of attainder, ex post facto, double jeopardy, and Eighth Amendment claims all hinge on whether Arizona's sex-offender registration statutes impose "a criminal or penal sanction as opposed to a civil remedy." *Ellingburg v. United States*, 607 U.S. __, 2026 WL 135982, at *2 (2026) (evaluating ex post facto claim); *see also E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir. 1997) (neither ex post facto nor double jeopardy clause implicated if State has not inflicted punishment); *Richardson v. Barr*, 827 F. App'x 624, 627 (9th Cir. 2020) (rejecting ex post facto, bill of attainder, and Eighth Amendment challenges to sex-offender registration laws after finding laws civil rather than punitive); *Smith v. Doe*, 538 U.S. 84, 97 (2003) (noting that the factors for determining whether a law constitutes punishment under the ex post facto clause have their origins in double jeopardy,

Eighth Amendment, and bill of attainder jurisprudence). A law is punitive if (1) the legislature intended to impose punishment; or (2) the law is "so punitive either in purpose or effect as to negate" the legislature's intent that it be civil and non-punitive in nature. *Smith*, 538 U.S. at 92. In considering whether a law's punitive effect outweighs a legislature's regulatory intention, courts consider the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), in addition to any other relevant considerations. *Smith*, 538 U.S. at 97. The *Mendoza-Martinez* factors include:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

372 U.S. at 168-69.

Applying *Mendoza-Martinez* and *Smith*, courts have repeatedly found that Arizona's sex-offender registration laws are non-punitive in nature. *See State v. Trujillo*, 462 P.3d 550, 562 (Ariz. 2020); *State v. Noble*, 829 P.2d 1217, 1224 (Ariz. 1992); *State v. Henry*, 228 P.3d 900, 907 (Ariz. App. 2010)[9]; *Arizona Dep't of Public Safety v. Maricopa Cnty. Superior Ct.*, 949 P.2d 983, 992 (Ariz. App. 1997). In *Trujillo*—which was decided after the enactment of the registration statutes' community notification and Internet posting requirements—the Arizona Supreme Court held that the legislature intended to create a civil regulatory scheme in enacting Arizona's sex-offender registration statutes, and that the effects of the statutes are not so punitive as to negate the legislature's intent. 462 P.3d at 554-62. The court recognized that the public dissemination of sex offenders' information may cause stigma and reputational harm, but it nevertheless concluded that the primary effect of the sex-offender registration laws "is not to punish, but to advance the important regulatory purpose of disseminating truthful information to the public for its own safety." *Id.* at 560.

Plaintiff alleges that the sponsor of Senate Bills 1236 and 1404 evidenced a punitive

---

[9] The Ninth Circuit Court of Appeals, on habeas review, found that *Henry* did not unreasonably apply federal law. *Clark v. Ryan*, 836 F.3d 1013, 1019 (9th Cir. 2016).

rather than civil intent by pledging to be "a living nightmare for sex offenders," and to "make pedophiles' lives hell." (Doc. 1 at 31 ¶ 203.)  But as discussed in Section IV(C)(2), *infra*, Plaintiff has not plausibly alleged that Senate Bills 1236 or 1404 affected his sex-offender registration or notification requirements so as to give him standing to challenge those laws.  Statements allegedly made by the sponsor of those bills are insufficient to show that the legislature had a punitive intent in enacting the other provisions of Arizona's sex-offender registration scheme.

Based on caselaw finding Arizona's sex-offender registration statutory scheme to be civil rather than punitive, and Plaintiff's failure to allege that he has been affected by any allegedly punitive statutory amendments made after the relevant cases were decided, the Court finds that Plaintiff has failed to plausibly allege ex post facto, Eighth Amendment, double jeopardy, or bill of attainder claims.  *See Greer*, 2013 WL 2896866, at *3-4 (dismissing ex post facto claim based on caselaw finding Arizona's sex-offender registration scheme to be civil rather than criminal); *Sheridan*, 2025 WL 3485201, at *14-15.  The Court will dismiss Counts 4, 5, 19, 12, 13, and 26 without prejudice.

### 9.  First Amendment Claims

Plaintiff alleges First Amendment violations in Counts 9, 15, 16, and 25.[10]

In Count 9, Plaintiff alleges that the public identification required by Arizona's sex-offender registration statutes constitutes compelled speech in violation of the First Amendment, and that the publication requirements chill Plaintiff's lawful online speech and associational activities.  (Doc. 1 at 15-16 ¶¶ 84-89.)  The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  A law that "[m]andat[es] speech that a speaker would not otherwise make necessarily alters the content of the speech" and is therefore considered a content-based regulation to which strict scrutiny applies.  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).  Content-based regulations of speech are

---

[10] Plaintiff also alleges in Count 9 that the public dissemination of his registry status causes reputational harm in violation of his liberty interests. (Doc. 1 at 16 ¶ 87.)  This portion of Count 9 will be dismissed with prejudice as duplicative of Plaintiff's due process claims.

constitutional only if "they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The government has compelling interests in preventing crime and protecting the community. *See United States v. Salerno*, 481 U.S. 739, 749-50 (1987). And the government may narrowly tailor a law that compels citizens to disclose information if the government "itself publish[es] . . . the desired information to the public." *Riley*, 487 U.S. at 800. Arizona's online publication and community notification schemes serve the compelling state interests "in public safety and crime prevention," and they "are narrowly tailored" in that "Arizona itself publishes information compelled from sex offenders." *Mayes*, 2025 WL 1865805, at *9. Accordingly, Plaintiff has failed to state a claim on which relief can be granted for compelled speech in violation of the First Amendment, and this portion of Count 9 will be dismissed without prejudice.

Liberally construing Plaintiff's Complaint, the Court finds that Plaintiff has adequately stated a claim in Count IX that the online identifier reporting requirements of Arizona's sex-offender registration statutes chills his speech and associational activities in violation of the First Amendment. *See generally Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) (finding similar California sex-offender registration statutes unnecessarily chilled First Amendment speech); *but see Sheridan*, 2025 WL 3485201, at *7-10 (distinguishing *Harris* and finding that Arizona's sex-offender registration statutes survive First Amendment scrutiny). The Court will require Defendants Mayes, Dannels, Glover, and McIntyre to answer the chilled-speech claim in Count 9 in their official capacities.

In Count 15, Plaintiff alleges that Arizona has denied him meaningful access to the courts in violation of the First and Fourteenth Amendments by failing to provide any avenue by which registrants may seek relief from lifetime registration. (Doc. 1 at 20-21 ¶¶ 118-122.) The constitutional right of access to the courts protects the "right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The right "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* Because Plaintiff does not allege the frustration of a non-

frivolous legal claim, the Court will dismiss Count 15 without prejudice.[11]

In Count 16, Plaintiff raises a First Amendment overbreadth challenge, alleging that Arizona's sex-offender registration statutes restrict substantially more conduct than necessary to achieve legitimate governmental objectives because they apply to all registrants without distinction, regardless of risk level or rehabilitation. (Doc. 1 at 21 ¶ 123-127.) Under the overbreadth doctrine, a statute is considered facially unconstitutional if it "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (internal quotation marks omitted). "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Tucson v. City of Seattle*, 91 F.4th 1318, 1327 (9th Cir. 2024) (internal quotation marks omitted). Here, Plaintiff's Complaint does not plausibly allege that a substantial number of the sex-offender registration statutes' applications are unconstitutional. *See Sheridan*, 2025 WL 3485201, at *10-11 (rejecting overbreadth challenge to Arizona's sex-offender registration statutes). The Court will dismiss Count 16 of the Complaint without prejudice.

In Count 25, Plaintiff alleges that Defendant Rush's hostile treatment of him, combined with his arbitrary reclassification, "reflects retaliation against Plaintiff for his attempts to comply and for his protected status as a disabled individual," in violation of the First Amendment. (Doc. 1 at 26-27 ¶¶ 165-168.) Plaintiff does not allege facts plausibly showing that he engaged in constitutionally protected speech or that Rush's allegedly hostile treatment of him was causally connected to that protected speech. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).[12] Accordingly, Count 25 will be dismissed without prejudice.

. . . .

. . . .

---

[11] To the extent Plaintiff alleges in this claim that imposing lifetime registration requirements violates due process, the Court will dismiss that portion of Count 15 with prejudice as duplicative of Plaintiff's due process claims.

[12] To the extent Plaintiff alleges in this claim that he was retaliated against due to his alleged disability, Plaintiff has not alleged facts plausibly showing that any defendant was aware of his alleged disability, as discussed in Section IV(B), *supra*.

## VI.   Warnings

### A. Address Changes

If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B.  Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

1.   Plaintiff's Application to Proceed in Forma Pauperis (Doc. 2) is **granted**.

2.   Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 6) is **denied without prejudice**.

3.   The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Dawn Rush, Kris Mayes, Sheriff Mark J. Dannels, Colonel Jeffrey D. Glover, and Brian McIntyre

4.   Plaintiff must complete and return the service packet to the Clerk of Court within **twenty-one (21) days** of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

5.   If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant **within ninety (90) days of the filing of the Complaint or within sixty (60) days of the filing of this Order**, whichever is later, the action may be dismissed

as to each Defendant not served.   Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

6. The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

7. The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

8. A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within thirty (30) days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

9. The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within thirty (30) days from the date the request for waiver was sent by the Marshal, the Marshal must:

    a. personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    b. within ten (10) days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if

required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

10. Defendant Dawn Rush in her individual capacity, and Defendants Kris Mayes, Sheriff Mark J. Dannels, Colonel Jeffrey D. Glover, and Brian McIntyre in their official capacities, shall answer the procedural due process claim in Count 2 of the Complaint within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

11. Defendants Kris Mayes, Sheriff Mark J. Dannels, Colonel Jeffrey D. Glover, Brian McIntyre in their official capacities shall answer the chilled-speech claim in Count 9 of the Complaint within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

12. Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

13. Defendants Ken Hunter, John Doe 1, John Doe 2, and John Doe 3 are **dismissed**.  The dismissal is without prejudice except with respect to the official-capacity claims asserted against Ken Hunter and the *Bivens* claims asserted against John Doe 2 and John Doe 3, which are dismissed with prejudice.

14. The individual-capacity claims asserted against Defendants Sheriff Mark J. Dannels, Colonel Jeffrey D. Glover, and Brian McIntyre are **dismissed** without prejudice.

. . . .

. . . .

. . . .

. . . .

15. Counts 1, 3-8, 10-33, as well as the anti-commandeering portion of Count 2 and the compelled speech and due process portions of Count 9, are **dismissed**. The dismissal is with prejudice as to Counts 8, 10-11, 18, 20-22, 24-25, 28-29, and 31-32, the anti-commandeering portion of Count 2, the due process portions of Counts 9 and 15, and the *Bivens* portion of Count 23. The dismissal is otherwise without prejudice.

Dated this 26th day of March, 2026.

_____
Honorable Rosemary Márquez
United States District Judge

- 31 -